CARR, J.
The effect of an office found for the king, is well settled by the old books: an office which finds that the *king has a right to enter, makes the king a good title, though the office be false; and therefore, no man shall traverse the office, unless he make himself a title; and if he cannot prove his title to be true, although he be able to prove his traverse to be true, yet his traverse will not avail him. Our law of escheats, after directing the manner in which the inquest shall be taken,' enacts, that “if the inquisition be found for the commonwealth, and there shall be any man, that will make claim to the lands, *196 he shall be heard without delay, on a traverse to the office, monstrans de droit, or petition of right. And the said lands or tenements shall be committed to him, if he shew good evidence of his right and title, to hold until the right shall be found and discussed for the commonwealth, or for the party finding sufficient surety to prosecute his suit with effect &c.” It seems to me, that this statute settles all the points on which so much black letter learning was expended in the argument. Eor example, there was much discussion upon the point, whether the monstrant is plaintiff or defendant? Now, the statute settles that, by saying “he shall give surety to prosecute his suit with effect;” which a plaintiff only can do. Again, there was a good deal of argument upon the question, whether the monstrant could succeed by impeaching the title of the commonwealth? The statute shews, that it was for no such purpose he was permitted to file his traverse, monstrans, or petition: it says, “if the inquisition be found for the commonwealth, and there be any man that will make claim to the lands, he shall be heard &c.” and it is this claim, not the title found by the office, which is to be discussed. This is further proved by the words, “if he shew good evidence of his right &c.” the land is to be delivered to him till this same right and title be discussed &c. This seems to me the clear meaning of the statute; and puts to rest every question, except this, — have the monstrants shewn a good right and title to the land? It is equally clear to me that they have not. Their holding as against the commonwealth is nothing; for we know the maxim of nullum tempus applies to all such cases. But *the commonwealth has chosen to relinquish her right to certain lands, under certain circumstances, 1 Rev. Code, ch. 86, § 40, and the question is, are these lands embraced by that provision? “No entry or location, on any lands within this commonwealth, which have been settled thirty years, prior to the date of such entry or location, and upon which quit rents or taxes, can be proved to have been paid, at any time within the said thirty years, shall be deemed valid; and any title which the commonwealth may be supposed to have thereto, is hereby relinquished.” Any title which the commonwealth may be supposed to have thereto: whereto? Surely the answer must be — to the lands described in the former part of the section; that is, lands subject to entry and location. It is very clear, that escheated lands are not of that description, but of a class wholly different. I think therefore that the judgment must be affirmed.
CABELL and BROOKE, J., concurred.
TUCKER, P.
The question, whether in a monstrans de droit, the monstrant is to be considered a plaintiff or defendant, has been very learnedly discussed. I do not think it necessary to decide it in this case, though I will incidentally observe, that if the monstrans de droit was a remedy at common law, which has been a moot point from the time of old Staumford (5 Bac. Abr. 571), the party appeared probably in the character of a defendant. Eor he was. confessedly confined to the record which found the title of the king, unless his own. title was by a record of as high a nature, which avoided the title found for the king; 4 Co. 55, b. He did not appear, therefore, in the character of a claimant, setting up a title unconnected with that found by the inquisition, but as a defendant, protecting himself from the title found, by shewing other matter in avoidance. Hence it is, that the form of a monstrans is that of a plea, and that the answer to it was called a replication. But, when the party, at common law, had a title which did not appear in the inquisition, he was driven to his petition of right. 2 Tidd *1132. The statutes of Ed. 3, remedied this, and gave the monstrans, instead of the petition; and as the-petitioner is in the nature of a plaintiff, so. the party in a monstrans de droit is a plaintiff, wherever from the nature of his demand, he must have been a petitioner at common law; that is to say, wherever his. title does not appear by the same record which finds the title for the king, or by a record of as high a nature, avoiding it. Claiming thus under a title not at all appearing on the inquisition, or connected with or arising out of the title found for the king, he could not obtrude himself as a. defendant, but was at common law driven to institute an independent proceeding by petition, which has been substituted by the monstrans de droit, in which he sets forth his claim, and prays, that the hands of the king may be removed, the operation of the inquisition having been to put the king into the possession. See 2 Tidd 1123.
Be this, however, as it may, the important question in this case is, whether the monstrant must succeed by the strength of' his own title, or may succeed by shewing that there is a defect in the title found for the commonwealth. This point has been expressly adjudged. The party cannot have judgment, though the king have no title, unless he can shew a title in himself. 2 Salk. 448; Vaughan 64; 2 Tidd 1123. This, is equally clear, whether in this case he be plaintiff or defendant. If plaintiff, he must of course shew title: if defendant, he has become such by his own act; he has not been called upon to defend himself; he has interpleaded of his own accord; he has obtruded himself into the cause, and he can only be received to do so, by shewing an interest in the event. This is a familiar principle in our jurisprudence. It would be monstrous were it otherwise. It would be an outrage to permit any person who pleased, without a shadow of interest, to enter the lists against a claimant in a court of justice. I know of no exception, but the case of an amicus curias, whose rights are of most circumscribed character. 2 Inst. 178. He can neither appeal nor have a supersedeas or writ of error. Dunlop v. The Commonwealth, 2 Call 284. Nor can any other person, unless he shews himself, interested in the controversy. Sayre v. Grymes, 1 Hen. & Munf. 404; Wingfield v. Crenshaw, 3 Hen. & Munf. 245. And in the case of Dunlop *197 v. The Commonwealth, it is moreover expressly decided, that an amicus curia; cannot move to quash an inquisition of escheat, unless he either has an interest himself, or represents somebody who has. In the case of The King v. The Bishop of Worcester, Vaughan 64, it is said — '“If the king be •once seized” (which he generally becomes upon finding an inquisition of escheat), '“his highness shall retain against all others who have not title, notwithstanding it be found also, that the king had no title, but that the other had possession before him; as appeared in 37 Ass. pi. 11, where it was found, that neither the king nor the party had title, and yet adjudged that the king should retain: for the office that finds the king to have a right or title to enter, makes ever the king a good title, though the office be false &c. and therefore no man shall 'traverse the office unless he m ike himself a •title. And if he cannot prove his title to be true, although he be able to prove his 'traverse to be true, yet this traverse will not serve him.” See also 16 Vin. Abr. 'Office or Inquisition. G. 4, pi. 8, citing Brooke, Traverse de office, pi. 48.
Resting upon these authorities, I am of opinion, that the court cannot give the judgment prayed for, of amoveas manus, unless a title is shewn by the appellants. ’They admit by their plea, that they have been removed, and they now ask to be restored to the possession. The question then recurs, do they shew a title to the property which justifies their demand of judgment? The shewing possession is not sufficient proof of title, though possession, indeed, is one of the ingredients of title. V0r, according to the authorities just cited, the party was not entitled to judgment, where it appeared that neither the king nor the party had title, and though it was found that the party had the possession first. Again, it is the received doctrine of all the books, that when the possession is vacant, the inquest ipso facto vests the possession in the crown; but if not vacant, a scire facias is necessary on the part of the king; a pregnant proof, that *'the possession does not stand in the way of the inquisition, though it puts the king upon the necessity of calling on the party in possession to shew cause why he should not surrender that possession. Ñor is there any thing hard or improper in this, for though possession is a good title' against all others than the commonwealth, yet as she is the owner of all the lands which have no other owner, it can never be sufficient to set up a bare possession against her, nor can any justly complain whose only title is a naked possession.
Then, as to the title set up by the appellants : it depends altogether on the construction of the statute, 1 Rev. Code, ch. 86, | 40. To pursue the ingenious course of reasoning of the counsel for the appellants, -in his commentary on this statute, would lead me into unnecessary detail. I shall therefore content myself with saying, that I consider the statute as having no application to the case of escheated lands; and that the intrusion upon them, though followed by a possession of more than thirty years, cannot be converted into a good title against the commonwealth, by the operation of that provision.
I am of opinion, that the judgment be affirmed.